# FOR PUBLICATION

**FILED & ENTERED**

**DEC 11 2013**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** zamora    **DEPUTY CLERK**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>ELIZABETH BLANCHE NELSON,<br><br>Debtor. | Case No. 6:12-bk-30664-SC<br><br>Chapter 7<br><br>Adv. No. 6:12-ap-01480-SC |
| TARGET NATIONAL BANK,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH BLANCHE NELSON,<br><br>Defendant. | **MEMORANDUM AND ORDER IMPOSING SANCTIONS PURSUANT TO FRBP 9011**<br><br>**Hearing:**<br>Date:  November 13, 2013<br>Time:  1:30 p.m.<br>Ctrm:  5C, Ronald Reagan Federal Building and United States Courthouse<br>411 West Fourth Street<br>Santa Ana, California 92701 |

## I.    INTRODUCTION

This matter came on to be heard on November 13, 2013 on the Court's *sua sponte* order to show cause (the "OSC") why sanctions should not be imposed against Weinstein, Pinson & Riley, P.S. ("WPR"), the attorneys for Target National Bank ("Target"), pursuant to Federal Rule of Bankruptcy Procedure 9011.[1]  William S. Weinstein, Esq. ("Weinstein"), Josh

---

[1] Unless otherwise indicated, all "Chapter" and "Section" references are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532, all "FRBP" references are to the Federal Rules of Bankruptcy Procedure, all "Rule" references are to the Federal Rules of Civil Procedure, and all "LBR" references are to the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California.

Harrison, Esq. ("Harrison"), Gail A Rinaldi, Esq. ("Rinaldi"), and an officer from Target, Adam Grim, appeared on behalf of Target.

## II.    BACKGROUND

Elizabeth Blanche Nelson (the "Debtor") filed chapter 7 on September 6, 2012 (the "Petition Date"), and listed an unsecured debt to Target in the amount of $6,659.00, regarding a credit card account with Target (the "Account"). Schedule F, Bk. Dk. 1.[2]  The Debtor listed $23,927.91 in additional unsecured credit card debt. *See* Schedule F, Bk. Dk. 1.  The Debtor's statement of financial affairs reflects that she moved from New Jersey to California in February of 2011.  SOFA, Bk. Dk. 1.  The Debtor's Schedule B lists "household goods, furniture, furnishings, appliances, stereo, televisions, computer printer" with an aggregate value of $3,500.  Schedule B, Bk. Dk. 1.

On October 10, 2012, Target referred the Account to WPR and provided WPR with a case referral sheet (the "Referral"). WPR's Motion for Preliminary Hearing (the "WPR Motion"), Adv. Dk. 41, Exh. 2. The Referral reflected that Debtor had incurred only two charges on the Account.  *See* WPR Motion, Adv. Dk. 41, Exhs. 2.  The Referral further reflects that the Debtor had made regular payments well above the minimum payments due on the Account up until August of 2012 (shortly before the Debtor filed bankruptcy). *See* WPR Motion, Adv. Dk. 41, Exhs. 2.  One charge on the Account was made 82 days prior to the Petition Date, on June 17, 2012, in the amount of $2,294.52 at a Sears Roebuck store in Succasunna, New Jersey (the "Sears Charge").  The only other charge indicated by the Debtor on the Account was a charge dated April 29, 2012, in the amount of $1,948.65, at a Jennifer Convertible store in Rockaway, New Jersey (the "Jennifer Convertible Charge").[3]  The Referral reflected that the Debtor had a credit limit of $6,900, and that she had incurred a principle balance of only $4,243.17. WPR Motion, Adv. Dk. 41, Exh. 2.

---

[2] Unless otherwise indicated, all references to "Adv. Dk." refer to the adversary docket in adversary proceeding number 6:12-ap-01480-SC, and all references to "Bk. Dk." refer to the bankruptcy case docket in bankruptcy case number 6:12-bk-30664-SC.

[3] At the hearing on the OSC, Weinstein represented that the Sears Charge was for a washer/dryer and that the Jennifer Convertible Charge was for a sofa/sleeper. This was the first time that WPR or Target had made any affirmative representation concerning what types of goods were purchased by the Debtor.

On October 29, 2012, WPR sent a letter to the attorney who, at that time,[4] represented the Debtor, in which WPR stated that it was investigating a potential Section 523(a) proceeding (the "Inquiry Letter"). WPR Motion, Adv. Dk. 41, Exh. 3. The Inquiry Letter stated that the Debtor had incurred a charge within the 90-day presumption period, and that the Debtor had "no disposable income . . . available to pay the minimum monthly requirement on unsecured debt." WPR Motion, Adv. Dk. 41, Exh. 3.  The Inquiry Letter stated that "[i]n lieu of Rule 2004 examination, please describe in writing all developments and/or events which contribute directly to your client's decision to file the Chapter 7 Petition." WPR Motion, Adv. Dk. 41, Exh. 3.  The Debtor did not respond to the Inquiry Letter, but WPR never sought a Rule 2004 examination of the Debtor. *See* WPR Motion, Adv. Dk. 41, 10:3-4.

Richard Ralston ("Ralston"), an attorney at WPR who has since retired, claims that he reviewed the Debtor's statements and schedules and the Account and concluded that "based on the [Debtor]'s use of her card to incur two large charges, one within 90 days of the Petition Date, and one shortly outside the presumption period, and based on her financial condition at the time she incurred the charges, that there was a basis to believe that these charges were non-dischargeable pursuant to section 523(a)(2) of the Bankruptcy Code." WPR Motion, Adv. Dk. 41, 7:19-24.

The deadline to object to dischargeability or discharge was December 12, 2012. Bk. Dk. 5. On December 11, 2012, Target filed a dischargeability complaint under Sections 523(a)(2)(A) and (C) (the "Adversary Complaint").  Count I of the Adversary Complaint centered on the Sears Charge, made 82 days prior to the Petition Date, and stated that "[u]pon information and belief, certain Charges may have been incurred for goods/services not reasonably necessary for the maintenance or support of the [Debtor] . . . such as charges to Sears Roebuck."  Adversary Complaint, Adv. Dk. 1, 2:12-14. Count II alleged actual fraud based on the Debtor's intent, applying the *Dougherty* factors.  Adversary Complaint, Adv. Dk. 1, 3-5.  Count III alleged "credit card kiting," stating that "[a]ny payments made on the credit

---

[4] The Debtor's former counsel, Winfield S Payne, III, Esq., withdrew from representation of the Debtor by order entered July 11, 2013. Adv. Dk. 17.

account appear to have been made from a cash advance from the account or from another credit card." Adversary Complaint, Adv. Dk. 1, 5:22-23. The only documentary evidence attached to the Adversary Complaint was the Referral. *See* Referral, Adv. Dk. 1, Exh. A.

On January 15, 2013, the Debtor answered the Adversary Complaint. Adv. Dk. 5.

Shortly after filing the Adversary Complaint, Ralston "resigned from WPR on January 4, 2013, and retired from the practice of law." WPR Motion, Adv. Dk. 41, 8:10-11.  On March 6, 2013, Lourdes Slinsky ("Slinsky"), Ralston's "successor" on this matter at WPR, engaged in settlement discussions with Debtor's counsel.  WPR Motion, Adv. Dk. 41, 9:1-2.

On March 6, 2013, the parties filed a joint status report, wherein Target stated that it needed to conduct additional discovery in the form of "Interrogatories, Requests for Admission, Requests for Production, Deposition of Debtor." Joint Status Report, Adv. Dk. 6, 2.  Target never engaged in any formal pretrial discovery.[5] *See, e.g.*, WPR Motion, Adv. Dk. 41, 10:3-4.

While Slinsky had apparently resigned from WPR sometime before the March 20, 2013 status conference [WPR Motion, Adv. Dk. 41, 9:1-8], Harrison, Slinsky's "successor" on this matter at WPR, attended the March 20, 2013 status conference [WPR Motion, Adv. Dk. 41, 9:15-26].  On March 22, 2013, the Court entered a scheduling order (the "Scheduling Order"), providing that "[t]he last day to have pre-trial motions heard and resolved is: July 31, 2013"; "[t]he last day to conduct discovery, and have discovery motions heard and resolved, is: May 31, 2013"; "[t]he trial date is: September 25, 2013 at 1:30 p.m."; and:

> Parties must comply with all applicable, Federal Bankruptcy Rules, Local Bankruptcy Rules, and Judge's Procedures/Instructions.
> . . . .
> b. All exhibits and appropriate copies must be served on chambers at least fourteen (14) days before trial.
> . . . .
> c. Witness lists must be served on chambers at least fourteen (14) days before trial. The witness list must include the subject of each witness' testimony.

---

[5] The Court notes that although at the hearing on the OSC, Weinstein characterized the parties' settlement negotiations as "informal discovery."

> d. Trial Briefs must be filed and served on chambers at least fourteen (14) days before trial. There will be no opening statements at trial. The Court will rely upon the Trial Briefs.
>
> **Failure to timely submit exhibits or witness lists will result in the exhibits and/or witnesses, as applicable, being excluded from use at trial.**

Scheduling Order, Adv. Dk. 9.

On July 25, 2013, WPR filed a motion to extend the discovery cutoff date (the "Motion to Extend"). Adv. Dk. 20. WPR failed to serve any exhibits or to file or serve any witness lists fourteen days before trial, as required by the Scheduling Order. *See* Adv. Dk. 9. As a result, on September 12, 2013, the Court denied the Motion to Extend on September 12, 2013 for cause, based upon a review of the Motion to Extend and all other documents and papers filed in the proceeding. Adv. Dk. 22.

On September 12, 2013, Rinaldi filed an appearance on behalf of Target [Adv. Dk. 23] (Rinaldi started working at WPR in August 2013) [Rinaldi Declaration, Adv. Dk. 41, 2:2].

On September 18, 2013, Rinaldi filed a motion on shortened notice to strike the Debtor's answer and for default judgment (the "Motion to Strike and for Default"). Adv. Dk. 26. On September 23, 2013, the Court denied the Motion to Strike and for Default because:

> The motion may be brought on regular notice pursuant to LBRs.  **Additionally, the Court has read and reviewed the Motion to Strike the Answer and Enter Default. The Movant has not set forth any legal or factual basis to strike [Debtor]'s answer. Therefore, the Court is DENYING the Application for Shortened Time as there does not appear to be any basis to grant the underlying motion**.

Order Denying Motion to Strike, Adv. Dk. 28 (emphasis in original).

On September 26, 2013, the trial on the Adversary Complaint was held. Adv. Dk. 30.  At trial, Rinaldi appeared on behalf of Target, and the Debtor did not appear. At trial, Rinaldi was unprepared to proceed, and the Court dismissed the Adversary Complaint. *See* WPR Motion, Adv. Dk. 41, 13:8-9 ("Ms. Rinaldi advised the Court that she was not prepared to proceed with the trial because she did not have the necessary documentation. . . ."); Adv. Dk. 30. Specifically, Rinaldi states in her declaration of October 18, 2013 regarding the OSC that "[b]ecause WPR had not received [Target]'s original business records affidavit authenticating the account statements before the trial date, I advised the Court that I was not prepared to

proceed with the trial because I did not have the necessary documentation. . . ." Rinaldi Declaration, Adv. Dk. 41-1, 2:21-25.

On October 1, 2013, the Court issued the OSC concerning whether Target and WPR should be sanctioned for violation of FRBP 9011(b). The OSC set forth the specific conduct that appeared to violate FRBP 9011—namely, Rinaldi's own admission that she lacked any documentary evidence to proceed at trial, coupled with the failure of WPR to "file a trial brief, witness list, or exhibit list, as required by the entered scheduling order of this Court." OSC, Adv. Dk. 31, 2:4-5.

On October 9, 2013, Rinaldi filed a motion to schedule a preliminary hearing on the OSC, to treat the November 13, 2013 OSC hearing as a preliminary hearing, or to shorten the time for the motion to be heard (the "Rinaldi Motion"). Adv. Dk. 34. On October 18, 2013, WPR filed a substantively similar motion, which requested similar relief (the "WPR Motion"). Adv. Dk. 41.

WPR's request for a preliminary hearing or to change the November 13, 2013 OSC to a preliminary hearing was denied by order entered October 30, 2013. Adv. Dk. 44.

## III.    DISCUSSION

### A.    The Bankruptcy Court's Authority to Sanction

Bankruptcy courts have inherent authority to regulate the practice of attorneys who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (federal courts are vested with inherent powers to manage their cases and courtrooms and to maintain the integrity of the judicial system); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284–85 (9th Cir. 1996). Bankruptcy courts also have express authority under the Bankruptcy Code and the FRBP to sanction attorneys. *See* 11 U.S.C. § 105(a); FRBP 9011, LBR 9011-3; *In re Nguyen*, 447 B.R. 268, 280-81 (B.A.P. 9th Cir. 2011).

### B.    Sanctions Under FRBP 9011

Generally, FRBP 9011[6] allows a bankruptcy court to impose sanctions in three situations—where papers are submitted demonstrate factual frivolity, legal frivolity, or where

---

[6] Federal Rule of Bankruptcy Procedure 9011 provides, in pertinent part, as follows:

papers are submitted for an "improper purpose." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 892 F.2d 802, 808 (9th Cir. 1989), *affirmed* 498 U.S. 533 (1991) (analyzing Rule 11).

### C.    Improper Purpose

The Court need not address whether WPR filed the Adversary Complaint for an "improper purpose" because, as discussed more fully below, the Court finds that the Adversary Complaint itself was "frivolous" within the meaning of FRBP 9011.

### D.    Frivolity

The standard for "frivolousness" is objective and entails a "filing that is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).

---

(b) Representations to the court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that <u>to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances</u>,--

. . . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

. . . .

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

. . . .

(B) On court's initiative

On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

FRBP 9011 (emphasis added).

### 1.    The Adversary Complaint Was "Baseless."

The facts of this case demonstrate that the underlying Adversary Complaint is "baseless" within the meaning of FRBP 9011. In determining whether the Adversary Complaint is objectively "baseless" and whether reasonable and competent inquiry by WPR was performed, the Court should analyze the underlying substantive law as applied to the facts. Each count of the Adversary Complaint is analyzed below pursuant to the standard of FRBP 9011.

### a.    There is no evidence that could reasonably support Count I of the Adversary Complaint under 11 U.S.C. § 523(a)(2)(C).

WPR contends that, because the Debtor made the Sears Charge within 90 days of the Petition Date, a rebuttable presumption of nondischargeability pursuant to 11 U.S.C. section 523(a)(2)(C)(i)(I).  However, Section 523(a)(2)(C)(i)(I) only applies to purchases for "luxury goods or services."  There is no presumption that all charges made within 90 days of bankruptcy are for "luxury goods or services."  Moreover, charges within 90 days for "goods or services reasonably necessary for the support or maintenance of the debtor or a dependant of the debtor," as defined in Section 523(a)(2)(C)(ii)(II), do not trigger the rebuttable presumption of Section 523(a)(2)(C)(ii)(I).  As set forth below, WPR lacked an objectively reasonable basis for Count I of the Adversary Complaint.

Cases in the Ninth Circuit that analyze Section 523(a)(2)(C)(i)(I) purchases, look to the nature of the underlying purchase with factual specificity to determine if the charges were "luxury," as defined under Section 523(a)(2)(C)(i)(I), as opposed to "goods or services reasonably necessary for the support or maintenance of the debtor or a dependant of the debtor," as defined in Section 523(a)(2)(C)(ii)(II).  *See, e.g.*, *In re Venegas*, 08-54541-ASW, 2010 WL 2165370 (Bankr. N.D. Cal. May 26, 2010) ("Most of the remaining charges appear, on their face, to be for luxury goods and services incurred within the 90–day presumption period under section 523(a)(2)(C)(i)(I), and includes such charges as $1,406.10 at Disneyland; $428.88 at various restaurants; $207.25 at the AT & T Ballpark; $175.88 at Toys "R" Us; $167.80 at the Monterey Bay Aquarium; $48.47 at Designer Perfume; $36.25 at Maya Cinemas; $32.22 at TLF*Flower Magik; $22.07 at Choice Fashion; $18.00 at Top Nails; $5.98

at Geni Sweet Things; and $5.90 at Sherri's Cookies. An additional $235.46 represents cash advance fees, a late fee, an overlimit fee, and finance charges based solely on the charges at issue.").

WPR has not provided any admissible evidence substantiating that the goods purchased by the Debtor for the Sears Charge were "luxury goods."[7]  The bankruptcy petition reflects that Debtor had recently moved from New Jersey to California in February 2012, just prior to the time she incurred the Sears Charge.  Moreover, both purchases were at retail stores, which sold, among other things, appliances and furnishings.

At the hearing on the OSC, Weinstein represented—for the very first time[8]—that the Sears Charge was for a washer/dryer; however, Weinstein failed to provide any admissible evidence or sufficient argument otherwise as to why a washer/dryer is a "luxury good."

Paragraph 9 of the Adversary Complaint states that "[u]pon information and belief, certain Charges may have been incurred for goods/services not reasonably necessary for the maintenance or support of the Defendant or Defendant's dependents, such as charges to Sears Roebuck." Adversary Complaint, Adv. Dk. 1, 2 ¶9.  The Adversary Complaint provides no evidence of the basis for such information or belief.  At the OSC, the Court asked Harrison what information formed the basis of his belief that the Sears Charge was for "luxury goods"; however, Harrison was unable to provide a satisfactory response.  Specifically, Harrison represented that at the time he signed the Adversary Complaint,[9] he believed that the Sears Charge was for "luxury goods," but that he could not remember the basis for his belief.

---

[7] In fact, prior to the OSC (where it was revealed for the first time that the Sears Charge was for a washer/dryer and the Jennifer Convertible Charge was for a sofa/sleeper) WPR essentially admitted in its own motion that it still lacked any evidence concerning what the Sears Charge or the Jennifer Convertible Charge was for—rather, WPR merely infers without basis that these charges were "non-essential." *See* WPR Motion, Adv. Dk. 41, 6:10.  The Court notes that WPR argues in the WPR Motion that, if these were appliances or furnishings, the Debtor did not include these items on Schedule B, because the value of these assumed purchased assets "should have totaled approximately what she paid for them, which was $4,243.18 in the aggregate – which is more than her entire household furnishings according to Schedule B."  Adv. Dk. 41, 6:2-3.  This statement ignores depreciation and "current value" calculations for the purposes of schedule B.

[8] This was the first time that WPR or Target had made any affirmative representation concerning what types of goods were purchased by the Debtor.

[9] Both Harrison and Ralston signed the Adversary Complaint.

Based on the extant evidence, WPR lacks an objectively reasonable basis to conclude that the Sears Charge was for "luxury goods," within the meaning of Section 523(a)(2)(C)(i)(I). Under the facts and circumstances of this matter, Count I of the Adversary Complaint was objectively "baseless," within the meaning of FRBP 9011—a competent attorney would not have reasonably believed that Count I of the Adversary Complaint was objectively grounded in fact or law.

**b.    There is no evidence that could reasonably support Count II of the Adversary Complaint under 11 U.S.C. § 523(a)(2)(A).**

The Ninth Circuit adopted a "totality of circumstances" approach to determining fraudulent intent in credit card nondischargeability proceedings. *In re Eashai*, 87 F.3d 1082, 1087 (9th Cir. 1996). Under this approach, intent may be inferred from the circumstances, and the *Dougherty* factors are useful in analyzing the debtor's intent. They are as follows:

1.    The length of time between the charges made and the filing of bankruptcy;
2.    Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3.    The number of charges made;
4.    The amount of the charges;
5.    The financial condition of the debtor at the time the charges are made;
6.    Whether the charges were above the credit limit of the account;
7.    Whether the debtor made multiple charges on the same day;
8.    Whether or not the debtor was employed;
9.    The debtor's prospects for employment;
10.    Financial sophistication of the debtor;
11.    Whether there was a sudden change in the debtor's buying habits; and
12.    Whether the purchases were made for luxuries or necessities.

*In re Dougherty*, 84 B.R. 653, 657 (B.A.P. 9th Cir. 1988) *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991) (citing *In re Faulk*, 69 B.R. 743, 757 (Bankr. N.D. Ind. 1986)).

It is unknown whether Debtor consulted with an attorney before the charges were made, but the extant evidence tends to suggests that the Debtor did not consult with an attorney prior to incurring the charges. There were only two charges made—the Sears Charge for $2,294.52 was incurred on June 17, 2012, 82 days prior to the Petition Date, and the Jennifer Convertible Charge for $1,948.65 was incurred on April 29, 2012, 131 days prior to the Petition Date. The

charges total $4,243.17 did not exceed the $6,900 credit limit.[10] *See* WPR Motion, Adv. Dk. 41,

5:16.  The charges were, of course, not made on the same day, but rather they were spaced

apart by 50 days (between April 29, 2012 and June 17, 2012).

The Debtor was apparently employed at the time of incurring each of these charges.

*See* Bk. Dk. 1.  The Debtor regularly paid more than the minimum payment due on these

charges up until the time that she filed bankruptcy.  The financial sophistication of the Debtor is

unknown, nor is the Debtor's financial condition at the time of the charges; however, Schedule

I indicates that the Debtor was a "transcriber," which does not necessarily indicate a high level

of financial sophistication.

The extant facts do not support a finding that the Debtor made a sudden change in

buying habits. WPR argues that the charges indicate a "material change in the pattern of her

use of the card" because "they are the only charges [Debtor] made during the nine months or

so before the Petition Date."  WPR Motion, Adv. Dk. 41, 19:8-9.  The Court believes that two

charges alone, incurred 50 days apart from each other and 131 and 82 days prior to the

Petition Date do not appear to indicate a "sudden change in buying habits."

WPR had several months to conduct an appropriate inquiry into the nature of these

charges prior to the dischargeability complaint deadline; however, it failed to do so.  Instead, it

appears from the record that WPR's only inquiry prior to filing the Adversary Complaint was a

letter sent to Debtor's counsel on October 29, 2012. *See* WPR Motion, Adv. Dk. 41, Exh. 3.

Despite failing to conduct any meaningful investigation prior to filing the Adversary

Complaint, WPR apparently argues that the Adversary Complaint was justified based upon

purported settlement negotiations that took place with Debtor's counsel on March 6, 2013

[WPR Motion, Adv. Dk. 41, 9:2], after the filing of the Adversary Complaint. *See* WPR Motion,

Adv. Dk. 41, 3:7-8 ("[T]he theory of the case was substantiated when [Debtor]'s counsel

advised his client to enter into a material settlement of the claims asserted in the complaint.").

Notwithstanding whether evidence of purported settlement discussions would even be

---

[10] The Court notes that the letter sent by WPR on October 29, 2012 suggests that these charges "nearly
exhausted" the credit limit. See WPR Motion, Adv. Dk. 41, Exh. 3.

admissible to establish the Debtor's liability for fraud,[11] this type of *post hoc* justification for

filing the Adversary Complaint is falls below the minimum standards of competence and

reasonableness set forth in FRBP 9011. WPR had several months, pursuant to the Scheduling

Order, to conduct discovery to investigate the underlying nature of these charges; however, it

failed to do so.

Based on the extant evidence, under the *Dougherty* factors, Count II of the Adversary

Complaint was objectively "baseless," within the meaning of FRBP 9011—a competent

attorney would not have reasonably believed that Count II of the Adversary Complaint was

objectively grounded in fact or law.

### c. There is no evidence that could reasonably support Count III of the Adversary Complaint concerning "credit card kiting" under 11 U.S.C. § 523(a)(2)(A).

Count III of the Adversary Complaint asserted allegations of "credit card kiting."

Specifically, Count III states that "Defendant was insolvent at the time of the Charges.

Defendant's net monthly income, after the deduction of expenses, was -$849.31, as listed on

Defendant's Schedule J. Any payments made on the credit account appear to have been

made from a cash advance from the account or from another credit card." Adversary

Complaint, Adv. Dk. 1, 5:19-23.

---

[11] WPR argues that the Court should use the alleged settlement negotiations between WPR and Debtor's former counsel, which allegedly took place several months after the Adversary Complaint was filed, to infer the Debtor's liability for fraud, thereby justifying the filing of the Adversary Complaint. WPR Motion, Adv. Dk. 41-1, 24:9-13 ("[T]he Court can and should infer that a responsible debtor's attorney would not support a settlement at that level unless he believed his client was exposed to a risk of a finding that she had committed fraud. This inference further supports the conclusion that the complaint establishes a prima facie case for fraud."); WPR Motion, Adv. Dk. 41-1, 9:26-10:1-2 ("[T]he Court should infer from the size of the agreed settlement and from Mr. Payne's eagerness to accept it on behalf of his client that Defendant did not dispute Target National Bank's allegations."). The Court notes the very purpose of Federal Rule of Evidence 408 is to exclude the use of this type of evidence to prove liability on, for example, a fraud claim. *See* 2 Federal Evidence § 4:57 (3d ed.) ("Clearly Fed. R. Evid. 408 excludes actual settlement agreements and actual offers, which is what is meant by the phrase 'furnishing or promising to furnish' or 'accepting or offering or promising to accept' some 'valuable consideration' in compromising a claim, when offered to prove what the Rule calls the 'liability' or 'invalidity' of a claim . . . . These broad terms describing the reach of the exclusionary principle (the proof cannot be used to prove 'liability' or 'invalidity' of a claim or its 'amount') were clearly intended to reach any use of the material covered by the principle in proof of any point that counts toward establishing 'liability' or 'invalidity' of a claim . . . ."). WPR, as the proponent of this evidence, has failed to provide any legal basis for the admissibility of any purported settlement evidence, such as a hearsay exception or an exception to Federal Rule of Evidence 408.

WPR provided no evidence of cash advances from other credit cards.  On the contrary, the only evidence alluded to by WPR under Count III was the Debtor's monthly budget deficit based on Schedules I and J, which WPR extrapolated retroactively to the time when the Debtor incurred the two charges.  Even if this retroactive extrapolation were proper, and Schedules I and J were evidence of the Debtor's monthly budget deficit as of the time of the two charges in question, such evidence is insufficient as a matter of law to support a finding of "credit card kiting." *In re Anastas*, 94 F.3d 1280, 1285-86 (9th Cir. 1996) (Ninth Circuit, finding that there was "is no evidence, such as in *Eashai*, that the payments were made through any sort of kiting scheme," reversed bankruptcy court for clear error in finding fraud under Section 523(a)(2)(A) based "almost exclusively" on debtor's financial condition).  The Ninth Circuit specifically held that "the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith." *In re Anastas*, 94 F.3d 1280, 1286 (9th Cir. 1996).

Based on the extant evidence, Count III of the Adversary Complaint for "credit card kiting" lacks an objectively reasonable evidentiary basis.  Therefore, Count III of the Adversary Complaint was objectively "baseless," within the meaning of FRBP 9011.

Moreover, as set forth below, WPR failed to conduct an objectively reasonable inquiry into whether any of the allegations contained in the Adversary Complaint were grounded in fact or law.

**2.     The allegations and other factual contentions lack evidentiary support and were not based upon a reasonable and competent inquiry.**

WPR failed to conduct an objectively reasonable investigation into the factual or legal merits of their claims prior to filing the Adversary Complaint. The only apparent inquiry performed by WPR prior to filing the Adversary Complaint was a review of the statements and schedules, a review of the Referral, and the Inquiry Letter of October 29, 2012.  As discussed above, the statements and schedules did not provide a reasonable factual basis for filing the Adversary Complaint.  The statements and schedules reflected that the Debtor had recently moved and started a new job in California, which apparently paid her less than her previous

job in New Jersey. The Referral reflected that the Debtor had incurred two charges, well below the credit limit, and had regularly made payments well above the minimum amount due for each of the several months leading up to her filing bankruptcy.

With respect to Count I of the Adversary Complaint—that the Sears Charge was nondischargeable because it was incurred within the 90-day presumption period for "luxury goods or services"—WPR failed to conduct a reasonable investigation into whether the Sears Charge was for "luxury goods or services."  The initial question under FRBP 9011 is whether WPR was objectively reasonable and competent in deciding to sue the Debtor without investigating these facts first.

For example, the Court finds persuasive the reasoning of *In re Pusateri*, where bankruptcy court found nondischargeability complaint was not "substantially justified" under Section 523(d) where creditor failed to conduct proper investigation prior to filing complaint as to whether charges made within 90-day presumption period were for "luxury goods" or necessities.  The *Pusateri* Court said "These charges might represent indulgences. They might be personal necessities. For this group of charges, it was incumbent upon [creditor] to make further inquiry before filing suit under § 523(a)(2)(C)." *In re Pusateri*, 432 B.R. 181, 203 (Bankr. W.D.N.C. 2010).  The *Pusateri* Court further found lack of "substantial justification" where creditor neither reviewed its own accounts nor conducted Rule 2004 examination of debtor but, instead, based its decision to file complaint solely on fact that debtor charged more than $1,000.00 on his credit card in 90 days prior to bankruptcy.  The *Pusateri* Court explained what the creditor should have done before filing the complaint as follows:

> The inquiry as to indeterminate charges need not require the formality or expense of a 2004 exam or an oral deposition. [Creditor] could have: (1) contacted debtor's counsel by email, letter, or phone to request explanation and substantiation of these charges, (2) attended [debtor's] § 341 meeting to ask for further explanation under oath; and/or (3) sought a further extension of time to object to discharge/dischargeability in order to make additional inquiries.

*In re Pusateri*, 432 B.R. 181, 203 (Bankr. W.D.N.C. 2010). The Court notes that "substantial justification" is thus a higher standard than that used to determine whether litigation is

frivolous. *In re Machuca*, 483 B.R. 726, 735 (B.A.P. 9th Cir. 2012) (citing *Pierce v. Underwood*, 487 U.S. 552, 566 (interpreting EAJA)).

Here, the charges were made shortly after the debtor moved into her new condo and started her new job. Right up until filing bankruptcy, Debtor made regular $200 payments on the account, well above the minimum required payments of $84, $105, $134, $180, $198.

Based on the dearth of evidence here, the allegations and other factual contentions wholly lacked evidentiary support and were not based upon a reasonable and competent inquiry by WPR.  WPR had ample time and resources to conduct an appropriate investigation. For example, WPR could have 1) questioned the debtor at the 341(a) hearing; sought to extend the dischargeability deadline; or 3) conducted a 2004 exam; and 4) subpoenaed records from Sears.  Instead, WPR merely sent the Inquiry Letter, then filed the Adversary Complaint and attempted to settle the matter with Debtor's counsel before any trial on the merits.

Because the Debtor did not respond to the Inquiry Letter, and WPR otherwise lacked a sufficient reasonable basis to file the Adversary Complaint, WPR must have followed up with reasonable competent inquiry.  Indeed, the Inquiry Letter itself threatened a 2004 examination of the Debtor, which would have been appropriate given the fact that Debtor's counsel did not respond to the Inquiry Letter.  Unfortunately, WPR never followed up on this threat and never conducted a 2004 exam of the Debtor.  Moreover, even after the Adversary Complaint was filed, WPR failed to propound any discovery on the Debtor, despite anticipating the need for such discovery. *See* Joint Status Report, Adv. Dk. 6, 2 (WPR stated that it needed to conduct additional discovery in the form of "Interrogatories, Requests for Admission, Requests for Production, Deposition of Debtor"; however, WPR never engaged in any pretrial discovery, *see* WPR Motion, Adv. Dk. 41, 10:3-4.).

In sum, WPR failed to conduct a reasonable and competent inquiry prior to filing the Adversary Complaint.  WPR's failure to do so, indeed, throughout each stage of litigation, constitutes woeful departure from the minimum standards of competence and diligence set forth under FRBP 9011.

In light of the foregoing, WPR violated FRBP 9011 by filing the Adversary Complaint because the underlying complaint lacked an objectively reasonable basis and WPR failed to conduct an objectively reasonable investigation into the facts and circumstances surrounding the allegations contained in the Adversary Complaint. While WPR contends that the pleadings were "all filed in good faith," FRBP 9011 makes no exception for a "pure heart, empty head" defense. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986); *Smith v. Ricks*, 31 F.3d 1478 (9th Cir. 1994).

## E.    Appropriate Sanctions

Federal Rule of Bankruptcy Procedure 9011 authorizes the Court to impose both monetary and nonmonetary sanctions, except that the Court may not issue monetary sanctions against a "represented party" for violations of FRBP 9011(b)(2) and in instances of voluntary dismissal or settlement. FRBP 9011(c)(2). Here, although WPR represents that they discussed settlement with Debtor's counsel, no such settlement was ever provided to or approved by the Court. In addition, the Adversary Complaint was not voluntarily dismissed, but rather the Court *sua sponte* dismissed the Adversary Complaint for failure of WPR to prosecute.

Federal Rule of Bankruptcy Procedure 9011 provides that sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FRBP 9011(c)(2). One of the purposes of FRBP 9011 is "to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *In re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir. 1991). Federal Rule of Bankruptcy Procedure 9011(c) allows the Court to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." FRBP 9011(c). A bankruptcy court should "apply the general rule that sanctions are to be allocated between counsel and client according to their relative culpability." *In re Rainbow Magazine, Inc.*, 136 B.R. 545, 554 (B.A.P. 9th Cir. 1992) *overruled on other grounds by Lockary v. Kayfetz*, 974 F.2d 1166 (9th Cir. 1992).

The Advisory Committee Note to Rule 11 directs the Court to consider the following factors to determine the appropriate amount of sanctions:

1.    whether the improper conduct was willful or negligent;
2.    whether it was part of a pattern of activity or an isolated event;
3.    whether it infected the entire pleading or only one particular count or defense;
4.    whether the person has engaged in similar conduct in other litigation;
5.    whether it was intended to injure;
6.    the effect it had on the litigation process in time or expense;
7.    whether the responsible person is trained in the law;
8.    that amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;
9.    the amount needed to deter similar activity by other litigants.

1993 Advisory Committee Note to Rule 11.

When the Court questioned Weinstein about how many times WPR had been sanctioned for filing frivolous pleadings, Weinstein represented to the Court as follows: "We have never been sanctioned in our firm's 27 year history for filing a baseless complaint before. Ever. . . . This is the first sanction I am aware of of any type against our firm for any purpose other than issues of missing scheduling orders and so on." Record at 2:31 pm.  In accordance with the Advisory Committee Note to Rule 11, the Court conducted a brief inquiry of recent, similarly-situated cases involving WPR, to ascertain whether WPR has engaged in a similar pattern or practice.  The Court's inquiry, concerning only published cases within the last year or so, reflects numerous similar dischargeability complaints filed by WPR where WPR was sanctioned for filing baseless complaints.

One case, also involving Ralston, decided in February of 2012 (appeal dismissed in late-June 2012) sanctioned WPR almost $15,000 pursuant to the "fee shifting" provisions of 523(d) in a very similar proceeding as the one at task.  The bankruptcy court in that case found that:

> In addition to the complaint's factual deficiencies, the complaint also lacked a reasonable basis in law. . . . In plaintiff's brief on the attorney's fees issue, in addressing the justification for its suit, plaintiff continues to use this faulty argument. Further, plaintiff adds facts that are not in the record, relies on statements of law without providing any statutory or case citation, and fails to provide any remotely persuasive argument that its complaint was justified.

*In re Shahidulla*, 465 B.R. 511, 515 (Bankr. D. Minn. 2012) appeal dismissed, CIV. 12-670 SRN, 2012 WL 2402817 (D. Minn. June 26, 2012).  Moreover, the *Shahidulla* Court stated that "[t]he amended complaint was replete with inaccuracies and misstatements, was no better

than the first complaint, and, in fact, was worse in that, grasping for something to allege and without prudently using 'on information and belief' language, plaintiff made untrue and seriously misleading allegations." *Id.* at 512.  The *Shahidulla* Court sanctioned WPR for filing a "frivolous" complaint, finding WPR's "repeated failures to provide a legal or factual basis for its claims" warranted almost $15,000 in sanctions.  *Id.*

In another case from last year, also involving Ralston, the bankruptcy court awarded sanctions in the amount of $9,583.75 against WPR for facts similar to the instant matter.  *See In re Conant*, 464 B.R. 511, 518 (Bankr. D. Mass. 2012) *aff'd sub nom. FIA Card Servs., N.A. v. Conant*, 476 B.R. 675 (D. Mass. 2012) (finding complaint "deficient" and substantially unjustified under § 523(d)).

In a similar case, also involving Ralston, which was affirmed on the merits in May of 2012, the District Court awarded almost $6,000 in attorney fees as fee-shifting sanctions under 523(d) against WPR.  *In re Dunbar*, CV 11-159-M-DWM, 2012 WL 1757427 (D. Mont. May 15, 2012). The *Dunbar* Court found WPR's 523(a)(2) claim "unjustified" and found that there was no fact investigation before the complaint was filed. *Id*. at *4.

At the hearing on the OSC, the Court questioned Weinstein about how many times WPR had been sanctioned in the Central District of California.  Weinstein replied that he believed WPR had been sanctioned "eight or ten times" in the Central District.  When the Court questioned Harrison about how many times he had been sanctioned in the Central District, he stated that he had probably been sanctioned "under half a dozen" times.  Harrison also represented that each time he is sanctioned, WPR pays the sanction.[12]  In accordance with Rule 11, the Court performed an inquiry into the record of the United States Bankruptcy Court for the Central District of California to ascertain whether WPR has engaged in a similar pattern or practice in other adversary proceedings.  Attached as Appendix A is a summary of the results of the Court's inquiry, which reflects numerous orders to show cause regarding sanctions filed against the same WPR attorneys involved in the instant proceeding.

---

[12] The Court notes that Weinstein represented to the Court that sanctions affect Harrison's pay "indirectly."

In addition, at the hearing on the OSC, the Court inquired whether Weinstein was aware of the percentage of adversary proceedings by WPR which actually proceeded to trial on the merits.  Harrison represented that he "wouldn't be surprised" if none of them proceeded to trial.  When asked how many proceedings were prosecuted by WPR against *pro se* defendants, Weinstein represented to the Court that the "vast majority are represented by counsel."  To the contrary, the Court's own inquiry into the records of the Central District reflect that none—not one—of the proceedings filed by the same subject attorneys to this sanctions order ever went to trial on the merits.  Moreover, of the 340 adversary proceedings filed by Ralston in the Central District of California, 86% were prosecuted against *pro se* defendants (only 14% were represented by counsel).  *See* Appendix B.  In addition, of the 115 adversary proceedings filed by Harrison in the Central District of California, 77% were prosecuted against *pro se* defendants (only 23% were represented by counsel). *See* Appendix C.  These percentages, of course, do not reflect any settlements between WPR and *pro se* defendants that may have occurred prior to the filing of an adversary proceeding.

At the OSC hearing, WPR represented that they use a computer program, dubbed FAST (Fraudulent Activity Screening Technology), which purportedly "analyzes many indicia of fraud that are identified as factual elements of objective intent to commit fraud under [among other cases, *In re Anastas*]. . . ." Weinstein Declaration, Adv. Dk. 46, 2:11-12.  "Objective intent," of course, is not the standard of inquiry in the Ninth Circuit, but rather, as specifically addressed in the *Anastas* case, subjective intent is the focus.[13]  While indicia of fraud may

---

[13] The Court notes the *Shahidulla* Court specifically admonished WPR for their misunderstanding or mischaracterization of the *Anastas* case:

> Plaintiff's complaint implied that defendant acted fraudulently by taking out credit without the ability to repay plaintiff. In plaintiff's responses to defendant's motions to dismiss, plaintiff relied on *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir. 1996), for the proposition that such an argument could be used to show fraud. However, *Anastas* explicitly stands for the proposition that courts should not look to debtor's ability to repay, but rather should look to debtor's intent to repay a debt in order to establish fraud. *Id.* at 1285–86 [quotation omitted]. In plaintiff's brief on the attorney's fees issue, in addressing the justification for its suit, plaintiff continues to use this faulty argument.

*In re Shahidulla*, 465 B.R. 511, 515 (Bankr. D. Minn. 2012) *appeal dismissed*, CIV. 12-670 SRN, 2012 WL 2402817 (D. Minn. June 26, 2012).

indicate bad faith, the Court believes that it is unreasonable to delegate this legal decisionmaking process to a non-attorney, let alone a computer system.  The FAST program uses a computer model that was developed in the 1990's to allegedly uncover "fraud."  But, there is no evidence that the algorithms are correct.  Indeed, given the very high percentages of *pro se* defendants that WPR prosecutes in Section 523 actions, the Court questions whether FAST's algorithms are resulting in a disparate impact on *pro se* parties.  Moreover, the issue of intent in a Section 523(a) proceeding is highly nuanced and requires a minimally competent level of legal expertise and diligence.  No matter how advanced the FAST program has become, the Court believes that they are an insufficient substitute for due diligence in this respect.[14]

The Court believes that certain monetary and non-monetary sanctions are appropriate in this instance. Weinstein either made a misrepresentation to the Court by stating that WPR had never been sanctioned for filing frivolous complaints, or he actually was unaware of the tens of thousands of dollars in sanctions imposed by bankruptcy courts, just within the past year or so, against WPR for filing frivolous Section 523(a) actions.  Assuming that Weinstein was completely truthful (*i.e.*, "to my knowledge") to the Court, it is apparent that tens of thousands of dollars (and perhaps more) in monetary sanctions are merely the cost of doing business for WPR.

Based upon the particular facts of this case, the Court believes that sunlight is the best disinfectant.  Because monetary sanctions alone seem to be ineffective in meeting the deterrence goals of FRBP 9011, true deterrence calls for both a monetary sanction and for the exposure of this pattern and practice by WPR.

Weinstein and WPR are hereby jointly and severally sanctioned the sum of $5,000.00 pursuant to FRBP 9011 for bringing this frivolous proceeding.  Weinstein is required to

---

[14] The Court believes that the FAST program is based on the doctrine first elucidated by Professor Ralph Brubaker (University of Illinois) as the "jam it to the debtor good and hard" doctrine.  Ralph Brubaker, *The Absolute Priority Rule for Individual Chapter 11 Debtors: To Be or Not to Be?*, 32 Bankr. L. Letter No. 10 at 9-10 (October 2012) (quoting Jack Ayer, *Justice Kagan's Torture Memo: "It Can't Possibly Mean That,"* available at: http://facultyblog.law.ucdavis.edu/post/Justice-Kagans-Torture-Memo-It-Cant-Possibly-Mean-That.aspx (posted Jan. 12, 2011)).

immediately report this sanction to the State Bar of California. This Order and Memorandum shall be published and posted on the Court's website for the Central District of California.

Weinstein is further ordered to send a true and correct copy of this Order and Memorandum by overnight mail, within 10 days of its entry, to the following entities:

1.  The State Bar of California, 1149 South Hill Street, Los Angeles, CA 90015-2299;

2.  The Offices of the United States Trustee for the Central District of California, Northern District of California, Eastern District of California, and the Southern District of California;

3.  Public Counsel Law Center, 610 South Ardmore Avenue, Los Angeles, CA 90005;

4.  Public Law Center, 601 Civic Center Drive West, Santa Ana, CA 92701-4002;

5.  Bet Tzedek Legal Services, 3250 Wilshire Boulevard, 13th Floor, Los Angeles, California 90010;

6.  Jennifer Dasteel, Director of Pro Bono, Inner City Law Center, 1309 East 7th Street, Los Angeles, California 90021; and

7.  American Bar Association, Center for Pro Bono, 321 North Clark Street, Chicago, IL 60654.

**IT IS SO ORDERED.**

### ###

Date: December 11, 2013

Scott C. Clarkson
United States Bankruptcy Judge

# APPENDIX A

## APPENDIX A

### 1. Richard Ralston

| Case/Proceeding | Document | Description |
|---|---|---|
| 8:06-ap-01200-ES | Order Dismissing Adversary Complaint, dated July 11, 2013. Adv. Dk. 9. | Ralston of WPR failed to prosecute adversary complaint. Proceeding dismissed due to inactivity for six months. |
| 2:12-ap-01980-TD | Order Dismissing Adversary Complaint, dated January 10, 2013, Adv. Dk. 8 | Ralston filed complaint, which was dismissed for lack of prosecution when Ralston failed to appear at the January 3, 2013 status conference hearing and failed to file a status conference report or any settlement agreement or other new pleadings. Note that Ralston retired on January 4, 2013, but WPR apparently did not assign a different attorney to the proceeding. |
| 6:12-ap-01171-MW | Judgment of Dismissal for Defendant, dated May 16, 2013, Adv. Dk. 20 | Ralston filed complaint, Harrison failed to comply with Local Bankruptcy Rule provisions concerning pleadings and an order to be filed and/or lodged in advance of the pretrial conference. |
| 6:12-ap-01171-MW | Judgment of Dismissal for Defendant, dated May 16, 2013, Adv. Dk. 19. | Ralston filed complaint, Harrison failed to comply with Local Bankruptcy Rule 7016-1(e). Proceeding dismissed. |
| 6:12-ap-01291-MW | Order to Show Cause Discharged, Adv. Dk. 35, filed July 1, 2013 | OSC discharged because, although WPR (Ralston, Slinsky, and Harrison) failed to comply with Judge Wallace's order, WPR explained that "Mr. Ralston, who filed the instant case, retired due to deeply personal and family reasons. Ms. Slinsky, the attorney at the Firm who took over the case, failed to properly calendar hearing dates and monitor the case, causing the Firm to violate this Court's order. Ms. Slinsky has since been terminated." |
| 6:12-ap-01289-MW | Order Denying Motion for Extension of Time to File Default Judgment, Adv. Dk. 25, filed September 17, 2013 | "The Bank argues that its failure to comply with this Court's Order requiring that any motion for entry of default judgment be heard on or before August 31, 2013 be excused on grounds of excusable neglect. Specifically, the Bank contends that this case had been assigned to attorney Paul Escobar, and that Mr. Escobar abruptly resigned on or about June 28, 2013. Assuming without determining that this is true, the Weinstein law firm had the entire month of July 2013 and a portion of the month of August |

| | | |
|---|---|---|
| | | 2013 to examine Mr. Escobar's case assignments, to reassign such matters to other attorneys and to take appropriate, timely action. Failure to do so is inexcusable neglect, not excusable neglect." |
| 6:12-ap-01417-WJ | Order Dismissing Adversary Proceeding For Failure to Appear, Adv. Dk. 11, filed March 22, 2013 | "On January 31, 2013 at 10:30 a.m., the Court held the initial status conference in this adversary proceeding. The defendant, Vicky M. Castruita, appeared. The plaintiff failed to appear. For the reasons stated on the record, the Court continued the status conference to March 21, 2013 at 1:30 p.m. and issued an order to show cause ("OSC") regarding why this adversary proceeding should not be dismissed without prejudice due to the failure of the plaintiff to prosecute the matter. The hearing regarding the Court's OSC was also set for March 21, 2013 at 1:30 p.m. On March 21, 2013 at 1:30 p.m. the Court held the hearing on the OSC. The defendant, Vicky M. Castruita, appeared. The plaintiff failed to appear. Accordingly, the Court hereby ORDERS as follows: 1. This adversary proceeding is hereby dismissed for failure to prosecute." |
| 8:06-ap-01200-ES | Dismissal for Want of Prosecution, Adv. Dk. 9, filed July 11, 2013 | Adversary dismissed for want of prosecution. |
| 8:12-ap-01350-MW | Dismissal of Adversary Proceeding, Adv. Dk. 27, filed May 16, 2013 | "adversary proceeding is dismissed with prejudice for Plaintiff's failure to comply with the Local Bankruptcy Rules, including LBR 7016-1. Specifically, Plaintiff failed to comply with Local Bankruptcy Rule provisions concerning pleadings and an order to be filed and/or lodged in advance of the pretrial conference. LBR 7016-1(c), (e)." |
| 8:12-ap-01350-MW | OSC re: Sanctions, Adv. Dk. 29, Filed June 4, 2013 | "The Court HEREBY ORDERS that the above-entitled adversary proceeding is set for a hearing on July 17, 2013 at 9:00 a.m. to permit any parties in interest to present argument to the Court as to why Josh Harrison, Esq. and FIA Card Services, N.A. should not be sanctioned for violating the Local Bankruptcy Rules, including LBR 7016-1. Specifically, Plaintiff failed to comply with Local Bankruptcy Rule provisions concerning pleadings and an order to be filed and/or lodged in advance of the pretrial |

| | | conference." |
|---|---|---|
| 8:12-ap-01350-MW | Order Granting Motion to Pay Defendant's Attorney Fees, Adv. Dk. 50, filed August 16, 2013. | "Plaintiff is to pay Defendant's Attorney Fees of Six Thousand Five Hundred Sixty Five Dollars ($6,565.00) within thirty (30) days of entry of this Order." |
| 8:12-ap-01351-MW | OSC re: Sanctions, Adv. Dk. 26, filed May 16, 2013 | "Plaintiff failed to comply with Local Bankruptcy Rule provisions concerning pleadings and an order to be filed and/or lodged in advance of the pretrial conference." |
| 8:12-ap-01351-MW | Order Granting Motion To Pay Defendant's Attorney's Fees, Adv. Dk. 48, filed August 22, 2013 | "Plaintiff is to pay Defendant's Attorney Fees of Six Thousand Nine Hundred Twenty-Five Dollars ($6,925.00) within thirty (30) days of entry of this Order." |
| 8:12-ap-01354-CB | OSC re: Sanctions, Adv. Dk. 28, filed May 31, 2013 | "Mr. Escobar admitted on the record that he was not admitted to practice in the Central District of California. He also represented that he was now the attorney on this case for Weinstein & Riley PS, instead of Josh Harrison who had filed a stipulation in this case a few hours prior to the hearing. For the reasons set forth on the record, a review of the documents filed in this case and good cause appearing, IT IS ORDERED that Plaintiff shall show cause, if any, why sanctions should not be imposed for having an attorney who is not admitted to this District appear on behalf of Weinstein & Riley PS. Any response shall be made in writing and must be filed with the Court at least fourteen (14) days before the hearing. The response must contain the following sentence, "This is a sworn statement being signed under penalty of perjury," and must be served on the Office of the United States Trustee. IT IS FURTHER ORDERED that a managing partner of Weinstein & Riley PS shall appear in person at the continued status conference on June 25, 2013 at 1:30 p.m." |
| 8:12-ap-01354-CB | Order Dismissing Adversary Complaint with Prejudice for Failure to Prosecute, Adv. Dk. 39, filed August 2, 2013 | "The above entitled adversary proceeding came for a Status Conference on July 30, 2013. Frederick Glasser specially appeared on behalf of Plaintiff. No status report was submitted. Based on the record of this case and the discussion on the record at the hearing, and good cause appearing, IT IS ORDERED that this adversary proceeding is DISMISSED WITH PREJUDICE for failure to prosecute." |

| 8:12-ap-01362-CB | OSC re: Sanctions, Adv. Dk. 22, filed May 31, 2013 | "Mr. Escobar admitted on the record that he was not admitted to practice in the Central District of California. He also represented that he was now the attorney on this case for Weinstein & Riley PS, instead of Josh Harrison who had filed a stipulation in this case a few hours prior to the hearing. For the reasons set forth on the record, a review of the documents filed in this case and good cause appearing, IT IS ORDERED that Plaintiff shall show cause, if any, why sanctions should not be imposed for having an attorney, who is not admitted to this District, appear on behalf of Weinstein & Riley PS." |
| --- | --- | --- |
| 9:08-ap-01136-RR | Order Dismissing Adversary for Failure to Prosecute, Adv. Dk. 4, filed January 13, 2009 | "This above-captioned matter came on for status conference on January 13, 2009, at 11:00 a.m. No appearance was made on behalf of the plaintiff. ACCORDINGLY, IT IS HEREBY ORDERED dismissing this adversary proceeding for failure to prosecute." |

## 2. Josh Harrison

| Case/Proceeding | Document | Description |
| --- | --- | --- |
| 2:12-ap-02259-BR | Order Assessing Sanctions, Adv. Dk. 8, filed February 27, 2013 | Failure to comply with LRB 7016-1. |
| 2:13-ap-01269-BB | Order Dismissing Adversary Complaint, Adv. Dk. 15, filed July 5, 2013 | "A status conference in the above-referenced adversary proceeding came on for hearing on July 2, 2013 at 2:00 p.m. The Court having found that (i) the Plaintiff's underlying complaint fails to state a claim for relief and (ii) the Plaintiff's causes of action are time-barred under 11 U.S.C. section 523." **Note**: This order was vacated by Order entered August 9, 2013; however, it was sent for an OSC "to show cause why the above-entitled adversary proceeding should not be dismissed based on lack of evidence to support the elements of plaintiff's prima facie case." Before the OSC hearing, Harrison voluntarily dismissed the proceeding. See Adv. Dk. 25, filed August 28, 2013. |
| 2:13-ap-01338-BB | Order for Sanctions, Adv. Dk. 9, filed May | Sanctions imposed where "counsel for plaintiff having failed to send someone who is familiar |

| | 20, 2013 | with the adversary proceeding to appear at the Status Conference, and for the reasons set forth on the record, IT IS HEREBY ORDERED as follows:<br><br>. . . .<br><br>6. Sanctions are hereby imposed on plaintiff's counsel Josh Harrison in the amount of $50.00 for sending an attorney to appear on plaintiff's behalf at the Status Conference who had no familiarity with this adversary proceeding or its status.<br>7. Josh Harrison shall pay $50.00 to the Clerk of the Bankruptcy Court not later than thirty days after entry of this order." |
|---|---|---|
| 2:13-ap-01440-RK | OSC for Sanctions for Failure to Appear, Adv. Dk. 10, filed September 4, 2013 | "The above entitled adversary proceeding came on calendar for a status conference hearing on August 20, 2013 at 1:30 p.m. Plaintiff Wells Fargo Bank, N.A., and counsel, failed to appear at the hearing at which appearances were required and failed to serve a copy of the unilateral status conference report on any party, including a judge's copy for the presiding judge as required by Local Bankruptcy Rule 5005-2(d).<br><br>. . . .<br><br>It is also ORDERED that Plaintiff Wells Fargo Bank, and counsel, shall show cause, if any, why sanctions should not be imposed for Plaintiff's unexcused failure to appear at the status conference hearing scheduled on August 20, 2013, and Plaintiff's failure to serve the unilateral status conference report on any party in this case, including the judge's copy."<br><br>**Note**: WPR's Response to the OSC states "the attorney at WPR who was at the time assigned to manage the case left the firm suddenly and without prior notice. He was not replaced until mid August, when Gail Rinaldi, an attorney licensed to practice law in California with an office in San Diego, joined the firm. His abrupt departure, followed on August 16, 2013, by the departure of the paralegal who did not file the [unilateral status report] with the supporting documentation, created significant disruption." Adv. Dk. 17, 3:11-15. |
| 6:12-ap-01171-MW | Judgment of Dismissal for Defendant, dated | Ralston filed complaint, Harrison failed to comply with Local Bankruptcy Rule provisions |

| | | |
|---|---|---|
| (Listed above in Ralston chart) | May 16, 2013, Adv. Dk. 20 | concerning pleadings and an order to be filed and/or lodged in advance of the pretrial conference. |
| 8:12-ap-01350-MW (Listed above in Ralston chart) | Dismissal of Adversary Proceeding, Adv. Dk. 27, filed May 16, 2013 | "adversary proceeding is dismissed with prejudice for Plaintiff's failure to comply with the Local Bankruptcy Rules, including LBR 7016-1. Specifically, Plaintiff failed to comply with Local Bankruptcy Rule provisions concerning pleadings and an order to be filed and/or lodged in advance of the pretrial conference. LBR 7016-1(c), (e)." |
| 8:12-ap-01350-MW (Listed above in Ralston chart) | OSC re: Sanctions, Adv. Dk. 29, Filed June 4, 2013 | "The Court HEREBY ORDERS that the above-entitled adversary proceeding is set for a hearing on July 17, 2013 at 9:00 a.m. to permit any parties in interest to present argument to the Court as to why Josh Harrison, Esq. and FIA Card Services, N.A. should not be sanctioned for violating the Local Bankruptcy Rules, including LBR 7016-1. Specifically, Plaintiff failed to comply with Local Bankruptcy Rule provisions concerning pleadings and an order to be filed and/or lodged in advance of the pretrial conference." |
| 8:12-ap-01350-MW (Listed above in Ralston chart) | Order Granting Motion to Pay Defendant's Attorney Fees, Adv. Dk. 50, filed August 16, 2013. | "Plaintiff is to pay Defendant's Attorney Fees of Six Thousand Five Hundred Sixty Five Dollars ($6,565.00) within thirty (30) days of entry of this Order." |
| 8:12-ap-01351-MW (Listed above in Ralston chart) | OSC re: Sanctions, Adv. Dk. 26, filed May 16, 2013 | "Plaintiff failed to comply with Local Bankruptcy Rule provisions concerning pleadings and an order to be filed and/or lodged in advance of the pretrial conference." |
| 8:12-ap-01354-CB (Listed above in Ralston chart) | OSC re: Sanctions, Adv. Dk. 28, filed May 31, 2013 | "Mr. Escobar admitted on the record that he was not admitted to practice in the Central District of California. He also represented that he was now the attorney on this case for Weinstein & Riley PS, instead of Josh Harrison who had filed a stipulation in this case a few hours prior to the hearing. For the reasons set forth on the record, a review of the documents filed in this case and good cause appearing, IT IS ORDERED that Plaintiff shall show cause, if any, why sanctions should not be imposed for having an attorney who is not admitted to this District appear on behalf of Weinstein & Riley PS. Any response shall be made in writing and must be filed with the Court at least fourteen (14) days before the |

| | | hearing. The response must contain the following sentence, "This is a sworn statement being signed under penalty of perjury," and must be served on the Office of the United States Trustee. IT IS FURTHER ORDERED that a managing partner of Weinstein & Riley PS shall appear in person at the continued status conference on June 25, 2013 at 1:30 p.m." |
|---|---|---|
| 8:12-ap-01354-CB (Listed above in Ralston chart) | Order Dismissing Adversary Complaint with Prejudice for Failure to Prosecute, Adv. Dk. 39, filed August 2, 2013 | "The above entitled adversary proceeding came for a Status Conference on July 30, 2013. Frederick Glasser specially appeared on behalf of Plaintiff. No status report was submitted. Based on the record of this case and the discussion on the record at the hearing, and good cause appearing, IT IS ORDERED that this adversary proceeding is DISMISSED WITH PREJUDICE for failure to prosecute." |
| 8:12-ap-01362-CB (Listed above in Ralston chart) | OSC re: Sanctions, Adv. Dk. 22, filed May 31, 2013 | "Mr. Escobar admitted on the record that he was not admitted to practice in the Central District of California. He also represented that he was now the attorney on this case for Weinstein & Riley PS, instead of Josh Harrison who had filed a stipulation in this case a few hours prior to the hearing. For the reasons set forth on the record, a review of the documents filed in this case and good cause appearing, IT IS ORDERED that Plaintiff shall show cause, if any, why sanctions should not be imposed for having an attorney, who is not admitted to this District, appear on behalf of Weinstein & Riley PS." |
| 8:13-ap-01086-CB | OSC re: Sanctions, Adv. Dk. 12, filed May 31, 2013 | "A status conference hearing was held on May 28, 2013 at 1:30 p.m., in Courtroom 5D, located at 411 W. Fourth Street, Santa Ana, CA 92701, before the Honorable Catherine E. Bauer, United States Bankruptcy Judge. Paul Escobar of Weinstein & Riley PS appeared telephonically on behalf of Plaintiff. Mr. Escobar admitted on the record that he was not admitted to practice in the Central District of California. He also represented that he was now the attorney on this case for Weinstein & Riley PS, instead of Josh Harrison who had filed a stipulation in the case on May 6, 2013. . . . . IT IS ORDERED that Plaintiff shall show cause, if any, why sanctions should not be imposed for |

|  |  | having an attorney, who is not admitted to this District, appear on behalf of Weinstein & Riley PS. Any response shall be made in writing and must be filed with the Court at least fourteen (14) days before the hearing. The response must contain the following sentence, "This is a sworn statement being signed under penalty of perjury," and must be served on the Office of the United States Trustee. IT IS FURTHER ORDERED that a managing partner of Weinstein & Riley PS shall appear in person at the continued status conference on June 25, 2013 at 1:30 p.m." |

### 3. Lourdes Slinsky

| Case/Proceeding | Document | Description |
| --- | --- | --- |
| 1:12-ap-01367-AA | Order Dismissing Proceeding, Adv. Dk. 35, filed June 14, 2013 | Plaintiff failed to comply with local rules; however, the case was dismissed prior to hearing on motion for sanctions. |
| 2:12-ap-02259-BR (Listed above in Harrison chart) | Order Assessing Sanctions, Adv. Dk. 8, filed February 27, 2013 | Failure to comply with LRB 7016-1. |
| 6:12-ap-01291-MW | OSC re: Contempt and Sanctions, Adv. Dk. 27, filed May 3, 2013 | "The Court held a hearing on April 23, 2013 to consider the motion filed by FIA Card Services, N.A. for default judgment under LBR 7055-1 [Dkt #23] ("Motion"). Appearances are as stated on the record. Having reviewed the record, case docket and documents filed, and having considered the arguments and representations made during the hearing, the Court HEREBY ORDERS THAT: 1. The Motion for entry of default judgment is denied with prejudice on the ground that the Motion was filed for a hearing over three months late. The deadline imposed by Court order for hearing the motion for default judgment was January 15, 2013. The Motion was heard on April 25, 2013. 2. An Order to Show Cause hearing is set for June 13, 2013 at 9:00 a.m., at which hearing FIA Card Services, N.A., Richard S. Ralston, Lourdes Slinsky and Josh Harris, and each of them, are ordered to appear and show cause why they should not be held in contempt for violating this Court's order, and why sanctions |

| | | should not be imposed on such entity and persons for violating this Court's order." |
|---|---|---|
| 6:12-ap-01291-MW | Order, Adv. Dk. 35, filed July 1, 2013 | "Mr. Harrison explained that Mr. Ralston, who filed the instant case, retired due to deeply personal and family reasons. Ms. Slinsky, the attorney at the Firm who took over the case, failed to properly calendar hearing dates and monitor the case, causing the Firm to violate this Court's order. Ms. Slinsky has since been terminated. Mr. Harrison took over this case and the Firm has taken remedial actions on behalf of the Firm to fix these issues going forward." |
| 2:13-ap-01269-BB (Listed in Harrison chart) | Order Dismissing Adversary Complaint, Adv. Dk. 15, filed July 5, 2013 | "A status conference in the above-referenced adversary proceeding came on for hearing on July 2, 2013 at 2:00 p.m. The Court having found that (i) the Plaintiff's underlying complaint fails to state a claim for relief and (ii) the Plaintiff's causes of action are time-barred under 11 U.S.C. section 523."<br><br>**Note**: This order was vacated by Order entered August 9, 2013; however, it was sent for an OSC "to show cause why the above-entitled adversary proceeding should not be dismissed based on lack of evidence to support the elements of plaintiff's prima facie case." Before the OSC hearing, Harrison voluntarily dismissed the proceeding. See Adv. Dk. 25, filed August 28, 2013. |
| 6:13-ap-01043-MJ | OSC re: Dismissal, Adv. Dk. 9, filed April 25, 2013 | Vacated because proceeding was dismissed. |
| 8:12-ap-01354-CB (Listed above in Harrison chart) | OSC re: Sanctions, Adv. Dk. 28, filed May 31, 2013 | "Mr. Escobar admitted on the record that he was not admitted to practice in the Central District of California. He also represented that he was now the attorney on this case for Weinstein & Riley PS, instead of Josh Harrison who had filed a stipulation in this case a few hours prior to the hearing. For the reasons set forth on the record, a review of the documents filed in this case and good cause appearing, IT IS ORDERED that Plaintiff shall show cause, if any, why sanctions should not be imposed for having an attorney who is not admitted to this District appear on behalf of Weinstein & Riley PS. Any response shall be made in writing and must be filed with the Court at least fourteen (14) days before the |

|  |  | hearing. The response must contain the following sentence, "This is a sworn statement being signed under penalty of perjury," and must be served on the Office of the United States Trustee. IT IS FURTHER ORDERED that a managing partner of Weinstein & Riley PS shall appear in person at the continued status conference on June 25, 2013 at 1:30 p.m." |
| 8:12-ap-01354-CB (Listed above in Harrison chart) | Order Dismissing Adversary Complaint with Prejudice for Failure to Prosecute, Adv. Dk. 39, filed August 2, 2013 | "The above entitled adversary proceeding came for a Status Conference on July 30, 2013. Frederick Glasser specially appeared on behalf of Plaintiff. No status report was submitted. Based on the record of this case and the discussion on the record at the hearing, and good cause appearing, IT IS ORDERED that this adversary proceeding is DISMISSED WITH PREJUDICE for failure to prosecute." |
| 8:12-ap-01406-CB | ORDER re: Sanctions, Adv. Dk. 13, filed January 24, 2013 | "At the status conference held on January 23, 2012, the Court discussed with Ms. Slinsky why Plaintiff failed to file a status report and failed to comply with the Court's ruling to attend one day of mediation prior to December 31, 2012. A review of the Court docket indicates Ms. Slinsky was only recently added to this case and Mr. Ralston was the only attorney representing Plaintiff when mediation was ordered. For the reasons set forth on the record, a review of the documents filed in this case and good cause appearing, IT IS ORDERED that: Lourdes Slinsky of Weinstein Riley shall pay sanctions for failure to timely file the status report, in the amount of $100.00, payable to the U.S. Bankruptcy Court and sent to the Clerk of the Court, U.S. Bankruptcy Court, Santa Ana Division, 411 W. 4th St., Santa Ana, CA 92701 within ten days of the January 15, 2013 hearing. IT IS FURTHER ORDERED that: Richard S. Ralston of Weinstein & Riley PS ("Mr. Ralston") representing FIA Card Services, N.A. shall personally appear on February 12, 2013 at 1:30 p.m. in Courtroom 5D, 411 West Fourth Street, Santa Ana, California, 92701." |
| 8:13-ap-01086-CB (Listed above in Harrison chart) | OSC re: Sanctions, Adv. Dk. 12, filed May 31, 2013 | "A status conference hearing was held on May 28, 2013 at 1:30 p.m., in Courtroom 5D, located at 411 W. Fourth Street, Santa Ana, CA 92701, before the Honorable Catherine E. Bauer, |

| | | United States Bankruptcy Judge. Paul Escobar of Weinstein & Riley PS appeared telephonically on behalf of Plaintiff. Mr. Escobar admitted on the record that he was not admitted to practice in the Central District of California. He also represented that he was now the attorney on this case for Weinstein & Riley PS, instead of Josh Harrison who had filed a stipulation in the case on May 6, 2013. . . . . IT IS ORDERED that Plaintiff shall show cause, if any, why sanctions should not be imposed for having an attorney, who is not admitted to this District, appear on behalf of Weinstein & Riley PS. Any response shall be made in writing and must be filed with the Court at least fourteen (14) days before the hearing. The response must contain the following sentence, "This is a sworn statement being signed under penalty of perjury," and must be served on the Office of the United States Trustee. IT IS FURTHER ORDERED that a managing partner of Weinstein & Riley PS shall appear in person at the continued status conference on June 25, 2013 at 1:30 p.m." |
|---|---|---|

### 4. Gail Rinaldi

| Case/Proceeding | Document | Description |
|---|---|---|
| 2:13-ap-01440-RK (Listed above in Harrison chart) | OSC for Sanctions for Failure to Appear, Adv. Dk. 10, filed September 4, 2013 | "The above entitled adversary proceeding came on calendar for a status conference hearing on August 20, 2013 at 1:30 p.m. Plaintiff Wells Fargo Bank, N.A., and counsel, failed to appear at the hearing at which appearances were required and failed to serve a copy of the unilateral status conference report on any party, including a judge's copy for the presiding judge as required by Local Bankruptcy Rule 5005-2(d). . . . . It is also ORDERED that Plaintiff Wells Fargo Bank, and counsel, shall show cause, if any, why sanctions should not be imposed for Plaintiff's unexcused failure to appear at the status conference hearing scheduled on August 20, 2013, and Plaintiff's failure to serve the unilateral status conference report on any party |

| | | |
|---|---|---|
| | | in this case, including the judge's copy." |
| | | **Note**: WPR's Response to the OSC states "the attorney at WPR who was at the time assigned to manage the case left the firm suddenly and without prior notice. He was not replaced until mid August, when Gail Rinaldi, an attorney licensed to practice law in California with an office in San Diego, joined the firm. His abrupt departure, followed on August 16, 2013, by the departure of the paralegal who did not file the [unilateral status report] with the supporting documentation, created significant disruption." Adv. Dk. 17, 3:11-15. |
| 8:12-ap-01641-CB | Order Assessing Sanctions Against Weinstein, Pinson & Riley, PS, Adv. Dk. 21, filed August 23, 2013 | "The Status Conference and Scheduling Order entered on May 23, 2013 ("Scheduling Order") required the parties to file a joint status report by August 6, 2013. LBR 7016-1(a) also requires the parties to file a joint status report fourteen days prior to any status conference, and a unilateral status report not less than seven days prior to the status conference if a party fails to cooperate. Plaintiff did not file a joint or unilateral status report at any time between the entry of the Scheduling Order and the August 13, 2013 status conference. Based on the record of this case and the discussions on the record at the status conference, and good cause appearing, IT IS ORDERED that the law firm of Weinstein, Pinson & Riley, P.S. is sanctioned $200.00 for failure to file a status report as required by LBR 7016-1(a)." |

# APPENDIX B

| Ralston | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---|---|---|---|---|---|
| Totals | 293 | 47 | 340 | 86% | 14% |
| | 1:09-ap-01279-GM | 1:12-ap-01002-AA | | | |
| | 1:11-ap-01483-MT | 1:12-ap-01023-VK | | | |
| | 1:12-ap-01008-AA | 1:12-ap-01237-MT | | | |
| | 1:12-ap-01022-AA | 1:12-ap-01266-AA | | | |
| | 1:12-ap-01030-AA | 1:12-ap-01267-AA | | | |
| | 1:12-ap-01069-AA | 1:12-ap-01381-AA | | | |
| | 1:12-ap-01070-VK | 2:05-ap-01557-VZ | | | |
| | 1:12-ap-01072-VK | 2:06-ap-01232-VZ | | | |
| | 1:12-ap-01073-MT | 2:10-ap-02933-BR | | | |
| | 1:12-ap-01074-VK | 2:11-ap-02889-PC | | | |
| | 1:12-ap-01075-MT | 2:12-ap-01078-RK | | | |
| | 1:12-ap-01104-MT | 2:12-ap-01143-BB | | | |
| | 1:12-ap-01110-MT | 2:12-ap-01725-RN | | | |
| | 1:12-ap-01120-AA | 2:12-ap-01906-BR | | | |
| | 1:12-ap-01121-AA | 2:12-ap-01985-PC | | | |
| | 1:12-ap-01144-AA | 2:12-ap-02028-BB | | | |
| | 1:12-ap-01170-VK | 2:12-ap-02227-RN | | | |
| | 1:12-ap-01196-MT | 2:12-ap-02414-ER | | | |
| | 1:12-ap-01199-MT | 2:12-ap-02483-BR | | | |
| | 1:12-ap-01202-MT | 2:12-ap-02484-BR | | | |
| | 1:12-ap-01224-VK | 2:12-ap-02541-ER | | | |
| | 1:12-ap-01227-MT | 2:12-ap-02543-ER | | | |
| | 1:12-ap-01233-VK | 6:11-ap-01006-MH | | | |
| | 1:12-ap-01238-MT | 6:11-ap-01493-MH | | | |
| | 1:12-ap-01239-MT | 6:11-ap-01986-MH | | | |
| | 1:12-ap-01307-VK | 6:12-ap-01031-WJ | | | |
| | 1:12-ap-01345-AA | 6:12-ap-01126-WJ | | | |
| | 1:12-ap-01367-AA | 6:12-ap-01171-MW | | | |
| | 1:12-ap-01368-VK | 6:12-ap-01172-MW | | | |
| | 1:12-ap-01392-VK | 6:12-ap-01210-MW | | | |
| | 1:12-ap-01402-MT | 6:12-ap-01211-MW | | | |
| | 1:12-ap-01410-VK | 6:12-ap-01338-MH | | | |
| | 1:12-ap-01427-AA | 6:12-ap-01351-DS | | | |
| | 1:12-ap-01432-AA | 6:12-ap-01458-MH | | | |
| | 1:12-ap-01434-VK | 6:12-ap-01477-WJ | | | |
| | 2:09-ap-02534-BR | 8:11-ap-01419-TA | | | |
| | 2:11-ap-02857-RK | 8:12-ap-01006-TA | | | |
| | 2:11-ap-02888-PC | 8:12-ap-01350-MW | | | |
| | 2:11-ap-03058-RN | 8:12-ap-01351-MW | | | |
| | 2:11-ap-03164-BB | 8:12-ap-01587-CB | | | |
| | 2:11-ap-03167-SK | 8:12-ap-01623-TA | | | |
| | 2:11-ap-03174-RN | 9:10-ap-01401-RR | | | |
| | 2:11-ap-03215-BB | 9:11-ap-01048-RR | | | |
| | 2:12-ap-01014-RK | 9:11-ap-01374-PC | | | |

| Ralston | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---|---|---|---|---|---|
| | 2:12-ap-01297-BR | 9:12-ap-01182-PC | | | |
| | 2:12-ap-01305-ER | 9:12-ap-01256-PC | | | |
| | 2:12-ap-01318-RN | 9:12-ap-01304-PC | | | |
| | 2:12-ap-01319-TD | | | | |
| | 2:12-ap-01322-RK | | | | |
| | 2:12-ap-01323-BR | | | | |
| | 2:12-ap-01324-RN | | | | |
| | 2:12-ap-01327-BR | | | | |
| | 2:12-ap-01411-TD | | | | |
| | 2:12-ap-01412-ER | | | | |
| | 2:12-ap-01426-BB | | | | |
| | 2:12-ap-01491-ER | | | | |
| | 2:12-ap-01492-BR | | | | |
| | 2:12-ap-01493-ER | | | | |
| | 2:12-ap-01494-ER | | | | |
| | 2:12-ap-01516-TD | | | | |
| | 2:12-ap-01560-RN | | | | |
| | 2:12-ap-01561-ER | | | | |
| | 2:12-ap-01575-RN | | | | |
| | 2:12-ap-01576-BR | | | | |
| | 2:12-ap-01629-BR | | | | |
| | 2:12-ap-01630-RN | | | | |
| | 2:12-ap-01631-RN | | | | |
| | 2:12-ap-01632-BR | | | | |
| | 2:12-ap-01657-TD | | | | |
| | 2:12-ap-01658-TD | | | | |
| | 2:12-ap-01688-TD | | | | |
| | 2:12-ap-01699-TD | | | | |
| | 2:12-ap-01700-RN | | | | |
| | 2:12-ap-01717-TD | | | | |
| | 2:12-ap-01718-TD | | | | |
| | 2:12-ap-01719-RN | | | | |
| | 2:12-ap-01723-ER | | | | |
| | 2:12-ap-01724-RK | | | | |
| | 2:12-ap-01775-PC | | | | |
| | 2:12-ap-01786-PC | | | | |
| | 2:12-ap-01787-TD | | | | |
| | 2:12-ap-01798-ER | | | | |
| | 2:12-ap-01799-TD | | | | |
| | 2:12-ap-01800-VZ | | | | |
| | 2:12-ap-01821-BB | | | | |
| | 2:12-ap-01823-ER | | | | |
| | 2:12-ap-01824-TD | | | | |
| | 2:12-ap-01825-BR | | | | |
| | 2:12-ap-01826-BR | | | | |
| | 2:12-ap-01827-ER | | | | |

| Ralston | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---------|--------|------------|-------------------|----------|--------------|
| | 2:12-ap-01828-TD | | | | |
| | 2:12-ap-01877-BR | | | | |
| | 2:12-ap-01893-RN | | | | |
| | 2:12-ap-01907-TD | | | | |
| | 2:12-ap-01909-ER | | | | |
| | 2:12-ap-01910-ER | | | | |
| | 2:12-ap-01911-BR | | | | |
| | 2:12-ap-01915-PC | | | | |
| | 2:12-ap-01916-BB | | | | |
| | 2:12-ap-01932-PC | | | | |
| | 2:12-ap-01939-BB | | | | |
| | 2:12-ap-01942-ER | | | | |
| | 2:12-ap-01943-TD | | | | |
| | 2:12-ap-01944-RN | | | | |
| | 2:12-ap-01965-PC | | | | |
| | 2:12-ap-01966-PC | | | | |
| | 2:12-ap-01980-TD | | | | |
| | 2:12-ap-02012-ER | | | | |
| | 2:12-ap-02130-BR | | | | |
| | 2:12-ap-02234-RN | | | | |
| | 2:12-ap-02237-RN | | | | |
| | 2:12-ap-02259-BR | | | | |
| | 2:12-ap-02271-BB | | | | |
| | 2:12-ap-02363-PC | | | | |
| | 2:12-ap-02365-RN | | | | |
| | 2:12-ap-02410-RN | | | | |
| | 2:12-ap-02412-RN | | | | |
| | 2:12-ap-02435-BR | | | | |
| | 2:12-ap-02436-BR | | | | |
| | 2:12-ap-02440-RN | | | | |
| | 2:12-ap-02442-RK | | | | |
| | 2:12-ap-02452-ER | | | | |
| | 2:12-ap-02456-RK | | | | |
| | 2:12-ap-02472-TD | | | | |
| | 2:12-ap-02477-PC | | | | |
| | 2:12-ap-02490-ER | | | | |
| | 2:12-ap-02491-TD | | | | |
| | 2:12-ap-02500-TD | | | | |
| | 2:12-ap-02501-BR | | | | |
| | 2:12-ap-02503-RN | | | | |
| | 2:12-ap-02563-RN | | | | |
| | 2:12-ap-02586-RK | | | | |
| | 2:12-ap-02627-BR | | | | |
| | 2:12-ap-02637-BR | | | | |
| | 2:12-ap-02695-RK | | | | |
| | 2:12-ap-02700-RK | | | | |

| Ralston | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---|---|---|---|---|---|
| | 6:11-ap-01586-MH | | | | |
| | 6:11-ap-01590-MH | | | | |
| | 6:11-ap-01749-MW | | | | |
| | 6:11-ap-01755-MH | | | | |
| | 6:11-ap-01849-WJ | | | | |
| | 6:11-ap-01864-WJ | | | | |
| | 6:11-ap-01938-MW | | | | |
| | 6:11-ap-01998-MH | | | | |
| | 6:11-ap-02022-DS | | | | |
| | 6:11-ap-02036-SC | | | | |
| | 6:11-ap-02039-DS | | | | |
| | 6:11-ap-02075-DS | | | | |
| | 6:12-ap-01005-MH | | | | |
| | 6:12-ap-01010-SC | | | | |
| | 6:12-ap-01056-DS | | | | |
| | 6:12-ap-01057-MJ | | | | |
| | 6:12-ap-01058-MJ | | | | |
| | 6:12-ap-01059-MJ | | | | |
| | 6:12-ap-01063-DS | | | | |
| | 6:12-ap-01065-MJ | | | | |
| | 6:12-ap-01066-MH | | | | |
| | 6:12-ap-01067-DS | | | | |
| | 6:12-ap-01068-DS | | | | |
| | 6:12-ap-01108-WJ | | | | |
| | 6:12-ap-01109-WJ | | | | |
| | 6:12-ap-01116-SC | | | | |
| | 6:12-ap-01124-DS | | | | |
| | 6:12-ap-01127-DS | | | | |
| | 6:12-ap-01151-DS | | | | |
| | 6:12-ap-01157-MW | | | | |
| | 6:12-ap-01160-DS | | | | |
| | 6:12-ap-01169-MH | | | | |
| | 6:12-ap-01170-MH | | | | |
| | 6:12-ap-01175-DS | | | | |
| | 6:12-ap-01193-SC | | | | |
| | 6:12-ap-01213-MH | | | | |
| | 6:12-ap-01234-SC | | | | |
| | 6:12-ap-01236-MH | | | | |
| | 6:12-ap-01242-WJ | | | | |
| | 6:12-ap-01247-DS | | | | |
| | 6:12-ap-01248-DS | | | | |
| | 6:12-ap-01258-MW | | | | |
| | 6:12-ap-01262-MH | | | | |
| | 6:12-ap-01266-DS | | | | |
| | 6:12-ap-01277-DS | | | | |
| | 6:12-ap-01278-MJ | | | | |

| Ralston | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---------|--------|-----------|-------------------|----------|--------------|
| | 6:12-ap-01286-SC | | | | |
| | 6:12-ap-01289-MW | | | | |
| | 6:12-ap-01291-MW | | | | |
| | 6:12-ap-01305-MH | | | | |
| | 6:12-ap-01314-WJ | | | | |
| | 6:12-ap-01325-SC | | | | |
| | 6:12-ap-01327-MH | | | | |
| | 6:12-ap-01337-WJ | | | | |
| | 6:12-ap-01364-MH | | | | |
| | 6:12-ap-01377-MW | | | | |
| | 6:12-ap-01384-DS | | | | |
| | 6:12-ap-01393-MW | | | | |
| | 6:12-ap-01397-MJ | | | | |
| | 6:12-ap-01404-MJ | | | | |
| | 6:12-ap-01407-DS | | | | |
| | 6:12-ap-01417-WJ | | | | |
| | 6:12-ap-01422-MH | | | | |
| | 6:12-ap-01443-DS | | | | |
| | 6:12-ap-01451-SC | | | | |
| | 6:12-ap-01460-WJ | | | | |
| | 6:12-ap-01461-WJ | | | | |
| | 6:12-ap-01480-SC | | | | |
| | 6:99-ap-01734-MJ | | | | |
| | 8:06-ap-01065-ES | | | | |
| | 8:06-ap-01200-ES | | | | |
| | 8:09-ap-01819-ES | | | | |
| | 8:11-ap-01333-TA | | | | |
| | 8:11-ap-01366-TA | | | | |
| | 8:11-ap-01396-TA | | | | |
| | 8:11-ap-01485-TA | | | | |
| | 8:11-ap-01506-TA | | | | |
| | 8:11-ap-01522-MW | | | | |
| | 8:11-ap-01523-ES | | | | |
| | 8:12-ap-01004-ES | | | | |
| | 8:12-ap-01005-TA | | | | |
| | 8:12-ap-01015-TA | | | | |
| | 8:12-ap-01017-MW | | | | |
| | 8:12-ap-01030-TA | | | | |
| | 8:12-ap-01064-ES | | | | |
| | 8:12-ap-01065-ES | | | | |
| | 8:12-ap-01066-ES | | | | |
| | 8:12-ap-01067-ES | | | | |
| | 8:12-ap-01119-MW | | | | |
| | 8:12-ap-01165-CB | | | | |
| | 8:12-ap-01194-ES | | | | |
| | 8:12-ap-01211-MW | | | | |

| Ralston | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---|---|---|---|---|---|
| | 8:12-ap-01240-ES | | | | |
| | 8:12-ap-01253-TA | | | | |
| | 8:12-ap-01254-TA | | | | |
| | 8:12-ap-01267-TA | | | | |
| | 8:12-ap-01268-ES | | | | |
| | 8:12-ap-01325-MW | | | | |
| | 8:12-ap-01341-CB | | | | |
| | 8:12-ap-01352-MW | | | | |
| | 8:12-ap-01354-CB | | | | |
| | 8:12-ap-01362-CB | | | | |
| | 8:12-ap-01368-ES | | | | |
| | 8:12-ap-01369-TA | | | | |
| | 8:12-ap-01371-TA | | | | |
| | 8:12-ap-01377-MW | | | | |
| | 8:12-ap-01378-TA | | | | |
| | 8:12-ap-01379-TA | | | | |
| | 8:12-ap-01380-ES | | | | |
| | 8:12-ap-01381-CB | | | | |
| | 8:12-ap-01384-MW | | | | |
| | 8:12-ap-01392-ES | | | | |
| | 8:12-ap-01394-TA | | | | |
| | 8:12-ap-01407-CB | | | | |
| | 8:12-ap-01419-TA | | | | |
| | 8:12-ap-01420-CB | | | | |
| | 8:12-ap-01458-ES | | | | |
| | 8:12-ap-01524-TA | | | | |
| | 8:12-ap-01525-ES | | | | |
| | 8:12-ap-01551-ES | | | | |
| | 8:12-ap-01572-CB | | | | |
| | 8:12-ap-01573-ES | | | | |
| | 8:12-ap-01574-CB | | | | |
| | 8:12-ap-01575-ES | | | | |
| | 8:12-ap-01588-CB | | | | |
| | 8:12-ap-01589-TA | | | | |
| | 8:12-ap-01594-SC | | | | |
| | 8:12-ap-01595-CB | | | | |
| | 8:12-ap-01596-ES | | | | |
| | 8:12-ap-01607-CB | | | | |
| | 8:12-ap-01613-ES | | | | |
| | 8:12-ap-01625-TA | | | | |
| | 8:12-ap-01634-SC | | | | |
| | 9:08-ap-01136-RR | | | | |
| | 9:09-ap-01049-RR | | | | |
| | 9:12-ap-01045-RR | | | | |
| | 9:12-ap-01046-RR | | | | |
| | 9:12-ap-01092-RR | | | | |

| Ralston | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---------|--------|------------|-------------------|----------|--------------|
| | 9:12-ap-01111-RR | | | | |
| | 9:12-ap-01115-RR | | | | |
| | 9:12-ap-01126-PC | | | | |
| | 9:12-ap-01127-PC | | | | |
| | 9:12-ap-01151-RR | | | | |
| | 9:12-ap-01192-RR | | | | |
| | 9:12-ap-01209-PC | | | | |
| | 9:12-ap-01214-RR | | | | |
| | 9:12-ap-01215-RR | | | | |
| | 9:12-ap-01216-RR | | | | |
| | 9:12-ap-01225-RR | | | | |
| | 9:12-ap-01277-RR | | | | |
| | 9:12-ap-01278-RR | | | | |
| | 9:12-ap-01305-PC | | | | |
| | 9:12-ap-01321-PC | | | | |
| | 9:12-ap-01323-RR | | | | |
| | 9:12-ap-01325-PC | | | | |
| | 9:12-ap-01326-PC | | | | |
| | 9:12-ap-01344-RR | | | | |

# APPENDIX C

| Harrison | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---|---|---|---|---|---|
| Totals | 88 | 27 | 115 | 77% | 23% |
| | 8:12-ap-01354-CB | 6:12-ap-01171-MW | | | |
| | 1:12-ap-01367-AA | 1:12-ap-01266-AA | | | |
| | 1:12-ap-01410-VK | 1:12-ap-01267-AA | | | |
| | 1:13-ap-01074-AA | 1:12-ap-01381-AA | | | |
| | 1:13-ap-01098-VK | 1:13-ap-01141-MT | | | |
| | 1:13-ap-01116-VK | 2:12-ap-02028-BB | | | |
| | 1:13-ap-01142-AA | 2:12-ap-02541-ER | | | |
| | 2:12-ap-01909-ER | 2:12-ap-02543-ER | | | |
| | 2:12-ap-02259-BR | 2:13-ap-01060-RN | | | |
| | 2:12-ap-02440-RN | 2:13-ap-01207-BR | | | |
| | 2:12-ap-02490-ER | 2:13-ap-01266-RK | | | |
| | 2:12-ap-02491-TD | 2:13-ap-01338-BB | | | |
| | 2:12-ap-02705-ER | 2:13-ap-01440-RK | | | |
| | 2:12-ap-02707-ER | 6:12-ap-01210-MW | | | |
| | 2:12-ap-02708-PC | 6:12-ap-01211-MW | | | |
| | 2:12-ap-02715-TD | 6:12-ap-01458-MH | | | |
| | 2:12-ap-02731-TD | 6:12-ap-01477-WJ | | | |
| | 2:13-ap-01101-TD | 6:12-ap-01497-MW | | | |
| | 2:13-ap-01179-ER | 6:13-ap-01110-WJ | | | |
| | 2:13-ap-01204-TD | 8:12-ap-01350-MW | | | |
| | 2:13-ap-01269-BB | 8:12-ap-01351-MW | | | |
| | 2:13-ap-01323-PC | 8:12-ap-01587-CB | | | |
| | 2:13-ap-01352-BB | 8:12-ap-01623-TA | | | |
| | 2:13-ap-01353-BB | 8:13-ap-01008-CB | | | |
| | 2:13-ap-01354-SK | 8:13-ap-01032-MW | | | |
| | 2:13-ap-01374-PC | 8:13-ap-01227-TA | | | |
| | 2:13-ap-01400-ER | 9:13-ap-01037-RR | | | |
| | 2:13-ap-01541-BB | | | | |
| | 2:13-ap-01615-ER | | | | |
| | 2:13-ap-01634-TD | | | | |
| | 2:13-ap-01635-ER | | | | |
| | 2:13-ap-01640-BB | | | | |
| | 2:13-ap-01708-ER | | | | |
| | 2:13-ap-01847-BR | | | | |
| | 6:12-ap-01289-MW | | | | |
| | 6:12-ap-01291-MW | | | | |
| | 6:12-ap-01417-WJ | | | | |
| | 6:12-ap-01422-MH | | | | |
| | 6:12-ap-01461-WJ | | | | |
| | 6:12-ap-01480-SC | | | | |
| | 6:12-ap-01489-SC | | | | |

| Harrison | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---|---|---|---|---|---|
| | 6:13-ap-01006-MH | | | | |
| | 6:13-ap-01025-MH | | | | |
| | 6:13-ap-01043-MJ | | | | |
| | 6:13-ap-01067-SC | | | | |
| | 6:13-ap-01068-MJ | | | | |
| | 6:13-ap-01077-WJ | | | | |
| | 6:13-ap-01101-DS | | | | |
| | 6:13-ap-01109-SC | | | | |
| | 6:13-ap-01115-DS | | | | |
| | 6:13-ap-01116-MH | | | | |
| | 6:13-ap-01160-SC | | | | |
| | 6:13-ap-01161-MW | | | | |
| | 6:13-ap-01168-DS | | | | |
| | 6:13-ap-01194-MJ | | | | |
| | 6:13-ap-01213-SC | | | | |
| | 6:13-ap-01228-DS | | | | |
| | 6:13-ap-01232-MJ | | | | |
| | 6:13-ap-01253-DS | | | | |
| | 6:13-ap-01273-WJ | | | | |
| | 8:12-ap-01362-CB | | | | |
| | 8:12-ap-01380-ES | | | | |
| | 8:12-ap-01589-TA | | | | |
| | 8:12-ap-01595-CB | | | | |
| | 8:12-ap-01607-CB | | | | |
| | 8:12-ap-01634-SC | | | | |
| | 8:12-ap-01639-TA | | | | |
| | 8:12-ap-01641-CB | | | | |
| | 8:12-ap-01649-TA | | | | |
| | 8:13-ap-01034-MW | | | | |
| | 8:13-ap-01044-TA | | | | |
| | 8:13-ap-01045-SC | | | | |
| | 8:13-ap-01084-SC | | | | |
| | 8:13-ap-01086-CB | | | | |
| | 8:13-ap-01097-SC | | | | |
| | 8:13-ap-01101-CB | | | | |
| | 8:13-ap-01109-CB | | | | |
| | 8:13-ap-01148-ES | | | | |
| | 8:13-ap-01177-ES | | | | |
| | 8:13-ap-01202-TA | | | | |

| Harrison | Pro Se | Not Pro Se | Total Adversaries | % Pro Se | % Not Pro Se |
|---|---|---|---|---|---|
| | 8:13-ap-01214-TA | | | | |
| | 8:13-ap-01215-CB | | | | |
| | 9:12-ap-01277-RR | | | | |
| | 9:12-ap-01278-RR | | | | |
| | 9:12-ap-01355-RR | | | | |
| | 9:13-ap-01032-RR | | | | |
| | 9:13-ap-01069-RR | | | | |
| | 9:13-ap-01103-RR | | | | |

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **MEMORANDUM AND ORDER IMPOSING SANCTIONS PURSUANT TO FRBP 9011** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of 12/11/2013, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- Josh Harrison     advnotices@w-legal.com
- Winfield S Payne    Wpaynelaw@aol.com
- Richard S Ralston     richardr@w-legal.com, advnotices@w-legal.com
- Gail A Rinaldi     gailr@w-legal.com, Advnotices@w-legal.com
- Lourdes R Slinsky     lrslinsky@gmail.com, advnotices@w-legal.com
- United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.   SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Elizabeth Blanche Nelson
2400 Del Mar Way, No. 106
Corona, CA 92882

William S. Weinstein
Weinstein, Pinson & Riley, P.S.
2001 Western Ave., Ste. 400
Seattle, WA 98121

☐ Service information continued on attached page

**3.   TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page